UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BONNIE LOUISE BISHOP,

                Plaintiff,

v.                                                       3:13-CV-1438
                                                      (GTS)
CAROLYN W. COLVIN, Acting Comm'r of Soc. Sec.,

                Defendant.
_____

APPEARANCES:                                             OF COUNSEL:

STANLEY LAW OFFICES                         JAYA A. SHURTLIFF, ESQ.
  Counsel for Plaintiff
215 Burnet Avenue
Syracuse, NY 13203

U.S. SOCIAL SECURITY ADMIN.                 DAVID B. MYERS, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this Social Security action filed by Bonnie Louise Bishop ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g) are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 17, 18.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

I.   RELEVANT BACKGROUND

   A.   Factual Background

Plaintiff was born on June 6, 1958. Plaintiff reports she left school in the eighth grade, but later earned a general equivalency diploma ("GED"). Her most recent full time employment was assembly piecework for an electronics manufacturer. Prior to that, Plaintiff worked as a certified nurse assistant. Generally, Plaintiff's alleged disability consists of fibromyalgia, pain in her neck, back, shoulder, legs and feet, degenerative arthritis, bone deterioration, neck tremors, migraine headaches, legal blindness in right eye, memory loss, and depression. Her alleged disability onset date is April 29, 2009 and her date last insured is June 30, 2013.

   B.   Procedural History

On October 17, 2009, Plaintiff applied for Social Security Disability Insurance. Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On January 25, 2011, Plaintiff appeared at a hearing before the ALJ, Thomas P. Tielens. (T. 55-76.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on April 15, 2011. (T. 85-99.) On December 15, 2013, the Appeals Council remanded Plaintiff's case to the ALJ for further consideration. (T. 100-103.)

On remand, Plaintiff appeared at a hearing on May 2, 2012, this time before ALJ, Marie Greener. (T. 16-54.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on July 19, 2012. (T. 737-757.) On September 25, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 758-764.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 742-749.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (T. 742.) Second, the ALJ found that Plaintiff's mild lumbar spine degenerative disc disease, early cervical spine degenerative disc disease and fibromyalgia are severe impairments, but that Plaintiff's vision problems, foot problems, head tremors, interstitial cystitis and mental impairments, including depression and cognitive difficulties, are not severe. (T. 742-745.) Third, the ALJ found that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 745.) The ALJ considered Listing 1.04. Fourth, the ALJ found that Plaintiff has

> the residual functional capacity ["RFC"] to lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and walk for up to two hours in an eight-hour workday but for no more than 15-to-20 minutes at one time; and sit for up to six hours in an eight-hour workday but for no more than two hours at one time, after which [Plaintiff] would need to stand and move around for 10-to-15 minutes before returning to sitting.

(T. 745-747.) Fifth, the ALJ found that Plaintiff is capable of performing her past relevant work as a circuit board assembler and an electronic assembler. (T. 747-748.) Sixth, and finally, in the alternative, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff also can perform. (T. 748-749.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes four separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in finding that Plaintiff's mental disorders are

3

not severe.  (Dkt. No. 17 at 10-12 [Pl.'s Mem. of Law].)  Second, Plaintiff argues that the ALJ's RFC determination was not a complete and accurate assessment of Plaintiff's abilities and limitations.  (*Id.* at 13-16.)  Third, Plaintiff argues that the ALJ erred in her assessment of Plaintiff's credibility.  (*Id*. at 16-19.)  Fourth, and finally, Plaintiff argues that the ALJ erred in finding that Plaintiff is capable of past relevant work and that there are jobs that exist in significant numbers in the national economy, which Plaintiff can perform.  (*Id.* at 20-21.)

### B. Defendant's Arguments

In response, Defendant makes five arguments.  (Dkt. No. 18 at 6-23 [Def.'s Mem. of Law].)  First, Defendant argues that the ALJ correctly found that Plaintiff's alleged mental impairments are not severe.  (*Id*. at 6-11.)   Second, Defendant argues that the ALJ's RFC finding is supported by substantial evidence.  (*Id*. at 11-15.)  Third, Defendant argues that the ALJ's credibility determination is supported by substantial evidence.  (*Id*. at 15-19.)  Fourth, Defendant argues that the ALJ's finding at step four of the sequential analysis that Plaintiff can perform her past relevant work is supported by substantial evidence.  (*Id*. at 19-21.)  Fifth, and finally, Defendant argues that the ALJ's alternative finding at step five of the sequential analysis, that there are jobs that exist in significant numbers in the national economy, which Plaintiff can perform, is supported by substantial evidence.  (*Id*. at 21-23.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial

evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.  **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

IV.  **ANALYSIS**

A.  **Whether the ALJ Erred in Failing to Find Plaintiff's Psychiatric or Mental Condition Severe**

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Defendant's memorandum of law. (Dkt. No. 18 at 6-11 [Def.'s Mem. of Law]). The Court would add the following analysis.

According to Social Security Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental

6

ability to do basic work activities." 20 C.F.R. § 416.921(a). The standard for a finding of severity under the second step of the sequential analysis has been found to be de minimis, and is intended only to screen out the truly weakest of cases. *Davis v. Colvin*, No. 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). At step two, the claimant bears the burden to provide medical evidence demonstrating the severity of her condition. *See* 20 C.F.R. § 416.912(a); *Bowen*, 482 U .S. at 146.

When applying the "special technique" used to determine whether a mental impairment is severe, the ALJ must first decide whether the claimant has a medically determinable impairment. After that threshold is met, the ALJ must then evaluate the rate of functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *See* 20 C.F.R. § 416.920a(c)(3); *Baszto v. Astrue*, 700 F. Supp. 2d 242, 247 (N.D.N.Y. 2010). Each of the first three areas is rated on a scale of "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4). The fourth area is rated on a scale of "[n]one, one or two, three, four or more." *Id.* "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits." *Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265, 266 (2d Cir.2008)). "Pursuant to the regulations, the ALJ's written decision must 'reflect application of the technique, and ... include a specific finding as to the degree of limitation in each of the [four] functional areas.'" *Id.* (quoting *Kohler*, 546 F.3d at 266 (quoting 20 C.F.R. § 416.920a(e)(2))).

Here, the ALJ found that Plaintiff's alleged mental impairments, including depressive disorder and cognitive difficulties, are not severe impairments because they do not cause more than minimal limitation in Plaintiff's ability to perform basic work activities. (T. 743.)

Plaintiff argues that the ALJ erred in finding that her mental impairments are not severe because multiple medical sources diagnosed her with depression. To be sure, Plaintiff's treating family practice physician, Brian Beach, M.D., noted in August 2010 that Plaintiff was moderately depressed and consequently, he prescribed Zoloft. (T. 567-568.) The following month, Dr. Beach diagnosed Plaintiff with persistent depression and changed her prescription to Wellbutrin. (T. 566.) Thereafter, Dr. Beach noted that Plaintiff's depression improved. (T. 565.) In a November 2010 "Spinal Impairment Questionnaire" Dr. Beach indicated that Plaintiff's depression contributes to the severity of her symptoms and functional limitations, citing his treatment notes of the previous three months, without further explanation. (T. 573-579.) Dr. Beach also indicated that Plaintiff is only capable of low stress work, without providing a basis for his conclusion in that regard. (T. 578.) The following month, Dr. Beach noted that Plaintiff's depression was stable. (T. 638.) A February 2011 treatment note made no mention of any mental impairment. (T. 639.) Finally, on April 30, 2012, Dr. Beach issued a letter wherein he provided opinions that he states are "consistent with those listed" in the November 2010 Spinal Impairment Questionnaire. (T.666.) In the April 2012 letter, Dr. Beach states that based on an August 2007 CT of the lumbar spine, a March 2009 CT of the cervical spine and an August 2007 MRI of the lumbar spine, he diagnosed Plaintiff with "lumbar pain secondary to lumbar spondylosis; spinal stenosis and spinal claudication; probably fibromyalgia; headaches, possibly migraine; essential tremor; and depression." (*Id.*) Dr. Beach further noted

8

that Plaintiff's pain, fatigue and other symptoms are "severe enough to interfere with her attention and concentration" and that Plaintiff's "depression contributes to the severity of her symptoms and functional limitations and she is only able to tolerate low work stress." (*Id.*) Dr. Beach also opined that Plaintiff's memory impairment[1] would affect her ability to work a regular job on a sustained basis. (*Id.*)

In March 2010, Plaintiff underwent a consultative psychiatric examination by Sara Long, Ph.D. (T. 521-524.) Dr. Long reported "no diagnosis" and opined that the results of her evaluation are "consistent with stress-related factors, but in itself this does not appear to be significant enough to interfere with her ability to function on a regular basis." (T. 523.)

Two years later, Plaintiff was examined by licensed clinical psychologist Edward M. Kamin, Jr., Ph.D. (T. 627-628.) Dr. Kamin diagnosed Plaintiff with a cognitive disorder, not otherwise specified, and with borderline intellectual function and depressive disorder, not otherwise specified, likely secondary to chronic pain. (T. 628.) In support, Dr. Kamin noted Plaintiff's report that she did not know whether she was in special education nor what classification she carried, but that she achieved a GED after three attempts. Dr. Kamin also noted Plaintiff's history of an alcohol-related motor vehicle accident, wherein she was the driver and as a result of which her best friend died. (T. 627-628.) Dr. Kamin also observed that Plaintiff's mood was depressed and her affect was tearful. Dr. Kamin concluded that Plaintiff appears to be suffering from depression of sufficient severity to warrant medication. (T. 628.) Dr. Kamin did not provide an opinion regarding Plaintiff's functional limitations.

---

[1] In a May 2010 treatment note, Dr. Beach summarized his treatment of Plaintiff to date in response to a request from Plaintiff's counsel for more more information regarding her condition. (T. 569.) Dr. Beach acknowledged Plaintiff's complaint of a memory deficit, but noted that mental status exams conducted by he and Monica Menichello, M.D. were both normal. (*Id.*) (*See also* T. 497, 489-490.)

In support of her determination that Plaintiff's mental impairments are not severe, the ALJ acknowledged that Plaintiff has medically determinable impairments. However, the ALJ made specific findings regarding Plaintiff's limitation in each of the functional areas set forth in 20 C.F.R. § 416.920a(c)(4). Specifically, the ALJ found that Plaintiff has no limitation in activities of daily living; social functioning; and concentration, persistence, or pace; and that Plaintiff has had no episodes of decompensation. (T. 744.) The ALJ appropriately relied on Plaintiff's statements, which appear in a February 2010 Function Report. Thus, after evaluating the rate of functional limitation resulting from Plaintiff's medically determinable impairments, the ALJ appropriately concluded that those impairments are not severe. Accordingly, the ALJ's conclusion that Plaintiff's mental impairments are not severe is supported by substantial evidence. For this reason, remand is not warranted on this basis.

B.   **Whether the ALJ Erred in Weighing the Medical Opinions of Record**

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 18 at 11-15 [Def.'s Mem. of Law]). The Court would add the following analysis.

Plaintiff argues that the ALJ erred in (1) purporting to give great weight to the opinion of her treating physician but failing to incorporate his opinions into the RFC determination; (2) giving considerable weight to the pre-onset opinion of Plaintiff's chiropractor, who is not an acceptable medical source; (3) giving significant weight to the opinion of a consultative examiner without explaining the inconsistencies between that opinion and the RFC determination; and (4) failing to incorporate Plaintiff's mental limitations into the RFC determination. Defendant counters that (1) the ALJ properly explained the weight assigned to the opinion of Plaintiff's treating physician and the reasons for not accepting part of the opinion;

10

(2) the ALJ appropriately explained the reasons for the weight assigned to the opinion of the consultative examiner; and (3) it was not error for the ALJ to assign weight to the opinion of a chiropractor because such opinions may be relevant to the determination of a plaintiff's ability to function.

It is important to note that the ALJ must consider every medical opinion of record. *See* 20 C.F.R. § 416.927(c). The opinion of a treating physician is entitled to controlling weight when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion. *See Shaw*, 221 F.3d at 134.

Where controlling weight is not given to the opinion of a treating physician, an ALJ's failure to explain the weight given to the opinion of other treating sources or a State agency medical consultant is legal error. *See Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y. 2006) (citing 20 C.F.R. § 404.1527(c), (e)). *See also Stytzer v. Astrue*, No. 07-CV-811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight

given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency].") (quoting 20 C.F.R. § 416.927); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295 (W.D.N.Y. 2006) (in light of the fact that the ALJ failed to afford the treating physician's opinion controlling weight, the opinion of the consultative examiner "takes on particular significance").

Here, the ALJ explained that she assigned great weight to the opinion of Plaintiff's treating physician, Dr. Beach, that Plaintiff can stand and walk for up to two hours in an eight-hour workday and lift and carry up to 20 pounds occasionally and 10 pounds frequently and that Plaintiff must be able to get up and move around approximately every two hours and must wait 10-15 minutes before sitting again. (T. 747, 576.) However, the ALJ explained, there is no basis provided for Dr. Beach's opinion that Plaintiff can only sit for two hours in an eight-hour workday and therefore, that opinion is not accepted. (T. 747.)

To be sure, Dr. Beach's opinion regarding Plaintiff's limitation to sitting for two hours is not supported by the record or his own treatment notes. Nowhere in Dr. Beach's treatment notes does he indicate Plaintiff's inability to sit for extended periods. Instead, the majority of Dr. Beach's notes regarding Plaintiff's impairments refer to her complaints of neck pain and pain in her legs, "especially with prolonged standing or walking." (T. 569.) Further Dr. Beach's opinion that Plaintiff cannot do any bending is belied by his August 2010 treatment note, wherein he explains that Plaintiff's lumbar spine forward flexion is done fairly easily without pain, and that she is without pain when she returns to a standing position. (T. 567.) In addition, after conducing a full musculoskeletal exam, consultative examiner, Justine Magurno, M.D.

12

reported that Plaintiff has no observed limitation for sitting or bending. (T. 518-519.) Accordingly, the ALJ did not err in failing to credit Dr. Beach's opinion regarding Plaintiff's sitting and bending limitations as they were inconsistent with both his own treatment notes as well as other acceptable medical source opinions.

The ALJ next explained that significant weight is given to Dr. Magurno's opinion because "it was rendered after a thorough examination and is not inconsistent with the entirety of the evidence." (T. 747.) Specifically, the ALJ noted Dr. Magurno's findings that Plaintiff has moderate limitation for walking and standing; moderate-to-marked limitation for lifting, carrying, pushing and pulling; mild limitation for fine motor activities; no observed limitation for bending; and mild limitation for squatting. (T. 747, 519.) In addition, the ALJ noted Dr. Magurno's finding that there were no observed limitations for sitting, speech and hearing. (*Id.*) Plaintiff's contention that the ALJ's failure to reconcile Dr. Magurno's opinions regarding her limitations for lifting with her ability to lift 20 pounds and the ALJ's failure to explain the omission of pushing and pulling limitations from the RFC are error especially considering Dr. Magurno's opined prognosis of "poor," fails to take into consideration the entirety of Dr. Margurno's report. For example, Dr. Magurno noted Plaintiff's reported activities of daily living to include cooking daily, cleaning and laundry once per week, shopping every three weeks, and showering daily. Dr. Magurno further noted that Plaintiff appeared to be in no distress, was able to walk on toes and heels without difficulty, needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. In addition, Dr. Magurno's exam revealed that Plaintiff has full range of motion of the lumbar spine and full strength in the upper extremities. (T. 517-518.) These findings are not inconsistent with the ALJ's RFC. Moreover, there is nothing in the record to suggest that Dr. Magurno's opined

13

"marked to moderate" limitation for lifting, carrying, pushing and pulling is inconsistent with Dr. Beach's opinion that Plaintiff can occasionally lift and carry up to 20 pounds.

Next, the ALJ gave considerable weight to the opinion of Plaintiff's chiropractor, Douglas Taber, D.C., that Plaintiff should avoid prolonged standing more than four hours per day with a work-week limit of 40 hours. (T. 747, 436.) The opinion of a source, such as a chiropractor, which is not an acceptable medical source under 20 C.F.R. § 416.913(a), may nonetheless be considered as an "other source" under 20 C.F.R. § 416.913(d). *Kunkel v. Comm'r of Soc. Sec.*, No. 12-CV-6478, 2013 WL 4495008, at *11 (W.D.N.Y. Aug. 20, 2013. Accordingly, such an opinion is properly considered "to show the severity of [Plaintiff's] impairment[] and how it affects [her] ability to work." 20 C.F.R. § 416.913(d). To be sure Dr. Taber's opinion references treatment that occurred prior to Plaintiff's alleged onset date. However, the ALJ's RFC in fact reflects a more restrictive limitation than that opined by Dr. Taber. Consequently, the ALJ's assignment of considerable weight to that opinion is harmless.

Finally, the ALJ's failure to incorporate mental limitations into his RFC determination is not error. The medical evidence does not support any finding of functional limitations stemming from Plaintiff's alleged mental or cognitive impairments. To the contrary, Dr. Long noted that Plaintiff is able to maintain attention and concentration, functions on an average intellectual level and that the results of her evaluation are not significant enough to interfere with Plaintiff's ability to function on a regular basis. (T. 523.) Dr. Beach's most recent treatment notes indicate that Plaintiff's depression is stable. (T. 565.) Finally, an exam note from neurologist, Dharmesh Patel, M.D., records Plaintiff's complaints of memory difficulties and stress but her denial of overt depression and notes that she is fully oriented, attentive and cooperative and that her recent and remote memory skills are intact. (T. 473-474.)

For these reasons, the ALJ did not err in weighing the medical opinions of record regarding Plaintiff's limitations. Accordingly, remand is not necessary on this basis.

## C. Whether the ALJ Properly Assessed Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 18 at 15-19 [Def.'s Mem. of Law]). The Court adds the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id*., at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility:

> (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id*.

Here, the ALJ noted Plaintiff's complaints of neck pain and back pain that spreads to her hips, which she described as burning, achy and sometimes stabbing. In addition, the ALJ noted Plaintiff's contention that she is unable to lift more than ten pounds or stand more than ten minutes, but that she can walk for two blocks before needing a ten minute rest. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms but that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible because they are unsupported by medical and other evidence, competent medical opinion and testimony. (T. 746.)

The ALJ went on to cite record evidence suggesting that Plaintiff has engaged in exaggerating her symptoms in an effort to obtain benefits, including the failure to engage in treatment for these symptoms. In addition, the ALJ noted that Plaintiff has described activities of daily living that are inconsistent with her complaints of disabling symptoms and limitations. Finally, the ALJ cited objective medical evidence, which fails to support Plaintiff's alleged level of severity of her symptoms. (T. 746.)

Plaintiff argues that the ALJ erred in relying on her own lay opinion to conclude that Plaintiff exaggerated her symptoms and by misstating Plaintiff's testimony regarding her daily activities. Plaintiff further argues that the ALJ otherwise failed to apply the required factors in evaluating Plaintiff's credibility, and therefore, remand is required.

16

However, the Court's reading of the ALJ's decision reflects that she considered the appropriate factors in evaluating Plaintiff's credibility. The ALJ appropriately considered Plaintiff's alleged symptoms and limitations. In addition, the ALJ considered Plaintiff's own assertions of daily activities in her March 2010 Function Report, including that she spends her days checking her email, watching the news, going to the store, and doing housekeeping, including sweeping, vacuuming, cleaning the bathroom, doing laundry, dusting, and putting away the dishes. (T. 746, 286.) The ALJ also noted Plaintiff's statement that she drives and helps care for her mother by taking her to doctor appointments and that she regularly attends church and swims at the school pool. (T. 746, 286, 290.) Finally, the ALJ noted that Plaintiff's regular hobbies include watching television, writing stories, reading and playing the guitar. (T. 746, 289-290.) Plaintiff argues that the ALJ misstated her testimony, referring to her hearing testimony that she goes to church sporadically, if she feels up to it and that she used to like to play guitar in the past but it hurts to play her guitar or lug it around. Plaintiff also refers to her hearing testimony that she goes shopping "once in a blue moon" and that her husband does the housework, shopping and cooking and that her son helps with cleaning. To be sure, Plaintiff testified at her hearing in May 2012, two years after she completed her Function Report. Moreover, her hearing testimony repeatedly includes statements such as, "I don't hardly do that at all anymore" referring to cooking, or "[my husband] does the vacuuming now" and "I liked playing my guitar in the past" indicating that her abilities have changed over time. (T. 36-37.) Nonetheless, the ALJ also considered that the objective medical evidence fails to support the alleged severity of Plaintiff's symptoms. For example, a September 2011 MRI of Plaintiff's lumbar spine reveals that there has been no significant interval change as compared to an August 2007 MRI, after which Plaintiff was able to work full time. (T. 605.)

17

Finally, although the ALJ found that Plaintiff "exaggerated her symptoms," she appropriately considered Plaintiff's failure to seek treatment. "An ALJ is permitted to consider a Plaintiff's failure to seek treatment for alleged disabilities when evaluating a Plaintiff's credibility with respect to statements of the extent of the impairments." *Miller v. Colvin*, — F. Supp. 3d —, —, 2015 WL 628359, at *12 (W.D.N.Y. 2015) (citing *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir.1989) (finding claimant's failure to seek medical attention "seriously undermine[d]" contention of disability); *Stroud v. Comm'r of Soc. Sec.*, No. 13-CV-3251, 2014 WL 4652581, at *11 (S.D.N.Y. Sept. 8, 2014); *Mahoney v. Apfel*, 48 F. Supp. 2d 237, 246 (E.D.N.Y.1999)). To be sure, the ALJ should consider any explanation for the failure to seek treatment, such as a lack of health insurance, when deciding what, if any, inference to make regarding the lack of treatment. *See Kennerson v. Astrue*, No. 10–CV–6591, 2012 WL 3204055, at *13 (W.D.N.Y. Aug. 3, 2012). However, here, Plaintiff only alleges she was having difficulty with her insurance covering physical therapy. There is no allegation that a lack of insurance played any role in Plaintiff's failure to continue certain medications, steroid injections or chiropractic care, all of which provided improved symptoms in the past. Consequently, the ALJ's failure to consider Plaintiff's alleged lack of insurance coverage for physical therapy is harmless error.

For all of these reasons, the ALJ appropriately evaluated Plaintiff's credibility. Therefore, remand is not necessary on this basis.

  **D.**   **Whether the ALJ's Conclusions at Steps Four and Five of the Sequential Analysis Are the Product of Hypotheticals that Are Based on an Erroneous RFC**

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 18 at 19-23 [Def.'s Mem. of Law].) The Court would only add the following analysis.

As explained in Parts IV.A.-C. of this Decision and Order, the ALJ's RFC determination is supported by substantial evidence. Accordingly, the ALJ's determinations at steps four and five of the sequential analysis are based on substantial evidence because they are made in reliance on the opinion of a vocational expert, who rendered her opinion based on a hypothetical that is supported by substantial evidence from a fully developed record. Therefore, remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 17) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: February 25, 2015
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge